BOARD OF TRUSTEES OF THE SEVILLETA DE
LA JOYA GRANT, FOR THE BENEFIT OF THE
OWNERS IN COMMON THEREOF, *v.* BOARD OF
TRUSTEES OF THE BELEN LAND GRANT.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW
MEXICO.

No. 129.   Argued December 22, 1916.—Decided January 22, 1917.

The Court of Private Land Claims derived all of its powers from the
Act of March 3, 1891, c. 539, 26 Stat. 854.
Under that act the Court of Private Land Claims had no jurisdiction
in confirming a grant and supervising its survey to extend the con-
firmation and boundaries over land included in another grant con-
firmed by Congress and patented before the passage of the act, or
to alter the boundaries of such other grant as so confirmed and as
described in the patent.
So *held*, where both grants were complete and perfect before the Mexi-
can cession, and the grant confirmed by Congress was senior in
time of grant.
Such jurisdiction could not be conferred on the Court of Private Land
Claims by consent of the owners of the grant confirmed by Congress.
20 N. Mex. 145, affirmed.

THE case is stated in the opinion.

*Mr. Neill B. Field* for plaintiff in error.

*Mr. Samuel Herrick*, with whom *Mr. R. P. Barnes* and *Mr. J. L. Nicholas* were on the brief, for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is an action in ejectment to recover the area in conflict between two land grants in New Mexico respectively known as the La Joya and the Belen, the plaintiff being the owner of the former and the defendant of the latter. The defendant prevailed and the judgment was affirmed. 20 N. Mex. 145.

The facts are these: Both grants were complete and perfect at the time of the Mexican cession and both were subsequently confirmed, the Belen in 1858 by an act of Congress, c. 5, 11 Stat. 374, and the La Joya in 1893 by a decree of the Court of Private Land Claims under the Act of March 3, 1891, c. 539, 26 Stat. 854. The Belen was the older grant and was patented in 1871, long before the proceeding for the confirmation of the La Joya grant was begun. Shortly after the decree confirming it was rendered the La Joya grant was surveyed preparatory to issuing a patent for it. Objections to the survey were made by two persons interested in the Belen grant, and the survey, with the objections, was laid before the Court of Private Land Claims as was required by the Act of 1891. The objections were to the effect that the survey erroneously placed the northern boundary of the La Joya grant within the Belen grant and thereby wrongly brought the two largely in conflict. After a hearing the court found the objections well grounded, ordered a resurvey of the La Joya grant and particularly designated what should be deemed its northern boundary. A resurvey conforming to that direc-

tion received the court's approval, and a patent for that grant was then issued. While the resurvey greatly reduced the area in conflict, it still left the northern boundary of the La Joya grant within the Belen grant, and a conflict. of about 11,000 acres remained.

Without questioning the superiority which otherwise would result from the seniority of the Belen grant, the plaintiff insisted that the action of the Court of Private Land Claims in directing what should be deemed the northern boundary of the La Joya grant, and in approving the resurvey wherein that direction was followed, amounted to an adjudication of the true location of the common boundary between the grants and was conclusive upon the owners of the Belen grant. But the state courts held the contention untenable in view of the provisions of the Act of 1891, and that ruling is the only one called in question here.

The Court of Private Land Claims derived all of its powers from the Act of 1891, the express purpose of which was to provide for and secure the adjudication of Spanish and Mexican land claims as between the claimants and the United States. The act divided the claims into two principal classes. One class, particularly described in § 6, embraced those which were "not already complete and perfect," and the other, particularly described in § 8, embraced those which were "complete and perfect" at the time of the Mexican cession. The La Joya grant belonged to the latter class, respecting which it was specially provided in § 8 that the court's confirmation should not include any land "that shall have been disposed of by the United States," nor have "any effect other or further than as a release of all claim of title by the United States," and that "no private right of any person as between himself and other claimants or persons" should be "in any manner affected thereby." And in § 13 it was generally provided in respect of both classes of claims that all the

proceedings in the court should be conducted and decided subject to certain enumerated restrictions, among which were the following: "Fourth. No claim shall be allowed for any land the right to which has hitherto been lawfully acted upon and decided by Congress, or under its authority. Fifth. No proceeding, decree, or act under this act shall conclude or affect the private rights of persons as between each other, all of which rights shall be reserved and saved to the same effect as if this act had not been passed; but the proceedings, decrees, and acts herein provided for shall be conclusive of all rights as between the United States and all persons claiming any interest or right in such lands."

In view of these provisions it is very plain that the Court of Private Land Claims was without any power to revise the action of Congress in confirming a particular grant, or to confirm another grant for the same lands or any part of them, or to determine the rights of private persons, as between themselves, to such lands. This court has frequently so held and has pointed out that a decision by that court sustaining a claim for lands, as to which Congress already had confirmed another claim, would not conclude anyone, but would be void, because in excess of the court's power. *United States* v. *Conway*, 175 U. S. 60; *Ainsa* v. *New Mexico & Arizona R. R. Co.*, *ibid.* 76, 90; *Las Animas Land Grant Co.* v. *United States*, 179 U. S. 201, 205–206; *United States* v. *Baca*, 184 U. S. 653, 659. In the last case it was said:

"The manifest intent of Congress appears to have been that with any land, of the right to which Congress, in the exercise of its lawful discretion, had itself assumed the decision, the Court of Private Land Claims should have nothing to do. The whole jurisdiction conferred upon that court is to confirm or reject claims presented to it, coming within the act. All the powers conferred upon it are incident to the exercise of that jurisdiction. When it has

no jurisdiction to confirm or reject, it has no authority to inquire into or pass upon the case, beyond the decision of the question of jurisdiction. The peremptory declaration of Congress, that 'no claim shall be allowed for any land, the right to which has hitherto been lawfully acted upon and decided by Congress,' necessarily prohibits the court from passing upon the merits of any such claim."

In confirming the La Joya grant and supervising its survey the court proceeded in evident contravention of that prohibition, for it extended the confirmation and survey to about 11,000 acres of lands within the Belen grant which had been confirmed by Congress and patented long before the Act of 1891 was passed. In this respect, therefore, the court overstepped its jurisdiction and its action was void.

As making for a different conclusion the plaintiff contends, first, that consistently with the limitations imposed it was quite admissible for the court to determine and establish the common boundary between the two grants, and, second, that by protesting against the original survey the owners of the Belen grant invited the court to act in the matter and therefore were bound by its decision. But neither contention can be sustained. The Court of Private Land Claims was bound to respect the Belen grant as confirmed by Congress and described in the patent. It was not given any power to reduce the area of that grant or to make any decisions respecting its boundaries that would affect private rights in the grant. On the contrary, it was prohibited from doing so. And, of course, the owners of the grant could not by any act or consent of theirs enlarge the power of the court as defined in the act creating it.

It follows that the state courts rightly refused to regard the action of the Court of Private Land Claims as in any way conclusive of the rights of the owners of the Belen grant in the area in conflict.

Whether the persons who appeared in the La Joya proceeding and objected to the original survey were authorized to represent or speak for all who were interested in the Belen grant seems to have been a disputed question, but as its decision would not affect the result here it requires no further notice.

*Judgment affirmed.*