[No. 2637. June 12, 1928.]

BOARD OF TRUSTEES OF ANTON CHICO LAND GRANT v. BROWN et al.

[269 Pac. 51.]

Andrieus A. Jones and A. T. Rogers, Jr., both of East Las Vegas, for appellants.

S. B. Davis, Jr., of Las Vegas, C. J. Roberts, of Santa Fe, and F. Faircloth, of Santa Rosa, for appellee.

## OPINION OF THE COURT

WATSON, J.  Appellants are the present owners of New Mexico private land claim No. 1, and appellee of claim No. 29, both confirmed by Act of Congress of June 21, 1860 (12 St. at L. 71) ; subsequent to which act both were surveyed and patented, the former to Preston Beck, Jr., and the latter to Manuel Rivera and thirty-five others, unnamed, their children, successors and assigns.  The former will be herein referred to as the Preston Beck grant, and the latter as the Anton Chico grant.

A suit was commenced in 1876 for partition of the Preston Beck grant. In the course of those proceedings, in 1903, Andrieus A. Jones was appointed receiver, and in such capacity took possession of the lands included within the Preston Beck survey. In 1907 the board of trustees of the Anton Chico Land Grant intervened, claiming superior title to a portion of such lands; such portion being included, as well, within the Anton Chico survey. The lands in dispute will be referred to as the overlap.

Upon the issues of the intervention, the trial court, upon specific findings and conclusions, awarded the overlap to the Anton Chico board. The present appeal is from that judgment. We recently handed down an opinion reversing the judgment and remanding the cause, with a direction to the district court to dismiss the intervention. A motion for rehearing is now before us. While we see no occasion to change our views as heretofore expressed, it appears that we may have misconceived some of appellee's contentions, and have been led into unnecessary discussion. We therefore withdraw the original opinion, and proceed anew.

The titles of both of these grants have been formerly in litigation. By reference to the decisions, we may abbreviate the statement of facts. Pino v. Hatch, 1 N. M. 125, and Stoneroad v. Beck, 16 N. M. 754, 120 P. 898, involved the Preston Beck title and disclose its history. The history of the Anton Chico grant is set forth in Reilly v. Shipman (C. C. A.) 266 F. 852.

The Preston Beck title originates in a concession made in December, 1823, to Juan Estevan Pino, by the then acting superior political chief of the province, with consent of the provincial deputation. Juridical possession was given in 1825, and appellants and their predecessors in interest seem to have had possession from that day to this. In May, 1855, the then owners of the grant initiated proceedings for confirmation before the surveyor general of New Mexico. He found the grant valid, and, on September 30, 1856, reported it favorably to the Secretary of the Interior, for confirmation by Congress. The

survey was made in 1860 and approved in November of that year. Patent issued June 13, 1883.

On behalf of the Anton Chico grant, a concession is claimed by the Governor, dated May 2, 1822, and juridicial possession given the same day. Its confirmation proceedings were initiated before the surveyor general in 1859. By his report, dated July 15, 1859, confirmation was recommended. Its survey was made in 1878, and corrected and approved in 1881. Its patent issued March 27, 1883.

The question is which of these two grants has the better right to the overlap. It can be decided upon consideration of appellee's contentions. They are: First, that the Anton Chico should prevail, because, as an original concession, it is prior; and, second, that, since the Preston Beck claimants protested before the surveyor general confirmation of the Anton Chico grant, and the surveyor general overruled the protest, the act of confirmation finally and conclusively adjudicated the question of superiority of title. It will be more convenient to dispose of the second contention first.

The confirmatory act describes no lands and names no confirmees. It confirms the grants as recommended for confirmation by the surveyor general, and by the numbers by which he had designated them in his report. Section 4 provides:

"That the foregoing confirmation shall only be construed as quitclaims or relinquishments, on the part of the United States, and shall not affect the adverse rights of any other person or persons whomsoever." (12 Stat. 71.)

Pursuant to this section, there was inserted in the granting clause of both patents this:

"* * * But with the further stipulation that in virtue of the provisions of the aforesaid Act of Congress of the 21st of June, A. D. 1860, that the foregoing confirmation shall only be construed as quitclaims or relinquishments on the part of the United States and shall not affect the adverse rights of any other person or persons whomsoever."

So, to render the confirmatory act intelligible, reference must be had to the proceedings before, and particularly

the reports of, the surveyor general. By his report of September 30, 1856, he had said of the Beck grant that it "vests in the grantee a title in fee to all the land embraced within the boundaries set forth in the granting decree." By his report of July 15, 1859, he said of the Anton Chico grant:

"This claim is contested by the heirs of Preston Beck, deceased, so far as it conflicts with the grant made to Juan E. Pino, of which they are the assigns.

"The grant made by Melgares on the 2d May, 1822, severed the land from the public domain, and placed it beyond the further reach and control of the government."

Appellee considers this a plain expression of the surveyor general that the Anton Chico title is superior because its earlier grant severed the land in question from the public domain, and placed it beyond the power of the Mexican government to grant it again. So, it is argued, a confirmation of the grant as recommended by the surveyor general includes a ratification by Congress of the surveyor general's decision upon the question and a conclusive adjudication of it. Appellants do not agree with this interpretation of the report, but we may pass that question.

An obvious objection to appellee's contention is that, by section 4, Congress apparently declared that it was not adjudicating anything as between the confirmees and other claimants of the same lands, but was merely deciding the rights of the confirmees as against the government. Section 4 is an apt expression of a refusal to consider or act upon any decision which the surveyor general may have made as to the superiority of title as between the two grants here in question. If that is what section 4 means, appellee's present contention will fall, since it concedes that the decision by the surveyor general had no force, unless Congress adopted it. The fact that the Beck claimants voluntarily submitted the question to the surveyor general is of no importance. Servilleta de la Joya Grant v. Belen Land Grant, 242 U. S. 595, 37 S. Ct. 215, 61 L. Ed. 514.

Reservation of the rights of others is not peculiar to the Act of June 21, 1860. It is expressed in some form in all confirmatory acts and acts establishing confirmation tribunals which we have encountered. See section 15 of the Act of March 3, 1851 (9 St. at L. 631), creating a tribunal for the ascertainment and settlement of private land claims in California; Act of December 22, 1858 (11 St. at L. 374), confirming claims of pueblos and towns in New Mexico; Act of March 3, 1869 (15 St. at L. 454), confirming private land claims in New Mexico; sections 8 and 13, Act of March 3, 1891 (26 St. at L. 854), creating the court of private land claims.

The occasion and necessity for the reservation in the act of 1851 were considered and set forth in Rodriguez v. United States, 1 Wall. 582, 17 L. Ed. 689. Mr. Justice Miller, speaking for the court, called attention to the loose and indefinite manner in which the Mexican government made grants, apparently attaching no value to the land, granting it in magnificient quantities, always as a gratuity; the only question being whether the locality asked for was vacant and was public property. These grants were not surveyed when made; indeed, there were no facilities for survey. A map accompanying the application, prepared by unskilled and uneducated herdsmen of cattle, was the only means of locating the claims. The proceeding which Congress had prescribed for confirmation of these grants (Act of March 3, 1851) was one strictly between the claimant and the government. No provision was made for notice to possible adverse claimants, nor for adjudication of adverse claims. The primary object was to ascertain the public domain from that which had become, under the Mexican government, private property. It had happened, as was to have been anticipated, that two or three claims for the same land, or parts of the same, were progressing *pari passu* in the same court, resulting in confirmation and patents therefor. We cannot doubt that like considerations induced Congress to include the similar reservation in the act of June 21, 1860.

It has been often pointed out that the purpose of Congress in creating tribunals for the confiirmation of private

land claims, and in confirming such claims by direct act, was to determine what lands belonged to the United States by segregating such as had become, under the former sovereignty, private property; not to adjudicate, nor to provide for the adjudication, of conflicting private claims. Rodriguez v. U. S., supra; U. S. v. Morillo, 1 Wall. 709, 17 L. Ed. 626; U. S. v. Conway, 175 U. S. 60, 20 S. Ct. 13, 44 L. Ed. 72; Botiller v. Dominguez, 130 U. S. 238, 9 S. Ct. 525, 32 L. Ed. 926; Chaves v. Whitney, 4 N. M. 318, 16 P. 278; Meader v. Norton, 11 Wall. 442, 20 L. Ed. 184.

The leading case in exposition of a reservation similar to section 4 is Beard v. Federy, 3 Wall. 478, 18 L. Ed. 88. There Mr. Justice Field, speaking for the court, demonstrates that "third persons," the terms employed in the act of March 3, 1851, does not embrace "all persons other than the United States and the claimants, but only those who hold superior titles, such as will enable them to resist successfully any action of the government in disposing of the property."

Following that decision, it has been well established that confirmation is conclusive as against the United States and as against a mere intruder or one claiming a title originating under the United States subsequent to the change of sovereignty. Tameling v. U. S. Freehold & Emigration Co., 93 U. S. (3 Otto) 644, 23 L. Ed. 998; Knight v. United Land Association, 142 U. S. 161, 12 S. Ct. 258, 35 L. Ed. 974; Russell v. Maxwell Land Grant Co., 158 U. S. 253, 15 S. Ct. 827, 39 L. Ed. 971.

But it is as well established that, in a case where the adverse party claims title under the former sovereign which is, equally with that of the confirmee, entitled to protection by the United States, confirmation is not conclusive, and it is for the courts to decide which claimant has "the better right." Beard v. Federy, supra; Henshaw v. Bissell, 18 Wall. 255, 21 L. Ed. 835; Rodriguez v. U. S., supra; Miller v. Dale, 92 U. S. 473, 23 L. Ed. 735; Adam v. Norris, supra; Meader v. Norton, supra; Carpenter v. Montgomery, supra; More v Steinbach, 127 U. S. 70, 8 S. Ct. 1067, 32 L. Ed. 51; U. S. v. Con

way, supra; U. S. v. Baca, 184 U. S. 653, 22 S. Ct. 541, 46 L. Ed. 733.

Tameling v. United States Freehold & Emigration Co., supra, is relied upon by appellee, and is a frequently cited case. That decision is not, however, opposed to the rule just stated. As Mr. Justice Davis there said, the cause was submitted upon an agreed statement of facts. That statement appears in the report of the decision by the Colorado territorial Supreme Court. 2 Colo. 411. It there appears that the only fact stipulated with reference to the defendant's claim was that he was in possession. ' For the purposes of the decision, he was a mere intruder. The language of the opinion should be considered in the light of that fact.

Considering these decisions, we see no reason for discounting the face value of section 4. It seems to reserve the right of each grant to contest title with the other. Such was the uniform policy. Whatever may have been the intention of the surveyor general, we are satisfied that Congress left the question open.

This brings us to appellee's first and principal contention—that Anton Chico, being the earlier grant, must prevail.

The validity of the Anton Chico title is questioned in a number of respects. It is pointed out that the document relied upon as the origin of its title is, executed in the name of the King of Spain at a time several months after the establishment of Mexican independence. It is contended that its title papers are not genuine. These matters will not assume any importance in this decision. It is contended that the title which Congress confirmed was to the individuals named and unnamed as inhabitants of the town of Anton Chico. It was so held in Reilly v. Shipman, supra. On the present motion appellee's counsel distinctly admit that such is the case. So we are here dealing with a town or community grant.

In form, the Preston Beck title rests upon a perfect grant to an individual, purporting to pass title in præsenti;

such a grant as·required no confirmation, and gained nothing but official recognition by it. Ely R. E. & I. Co. v. Watts (C. C. A.) 262 F. 721; Ainsa v. N. M. & A. R. Co., 175 U. S. 76, 20 S. Ct. 28, 44 L. Ed. 78; U. S. v. Conway, supra. Its invalidity is claimed, however, on the ground that the granting officers were, at the particular time, without authority to dispose of the Mexican public domain. This was the result arrived at in Stoneroad v. Beck, supra. That decision was reversed by the United State Supreme Court. For the purposes of this appeal, however, we shall assume, without deciding, that the original concession to Juan Estevan Pino was invalid, for the reason stated.

The admission that the Anton Chico is a town or community grant involves important consequences. It is settled that in such cases lands not actually allotted to settlers remained the property of the sovereign, to dispose of as it might direct. U. S. v. Santa Fe, 165 U. S. 675, 17 S. Ct. 472, 41 L. Ed. 874; U. S.·v. Sandoval, 167 U. S. 278, 17 S. Ct. 868, 42 L. Ed. 168; Rio Arriba Land & Cattle Co. v. U. S., 167 U. S. 298, 17 S. Ct. 875, 42 L. Ed. 175; U. S. v. Pena, 175 U. S. 500, 20 S. Ct. 165, 44 L. Ed. 251; Bond v. Barela, 16 N. M. 660, 120 P. 707, affirmed, 229 U. S. 488, 33 S. Ct. 809, 57 L. Ed. 1292. Appellee's counsel further admit that none of the lands here in controversy had ever been·allotted. It necessarily results that the *jus disponendi* which belonged to the Mexican government passed to the United States; that it is the quitclaim rather than the confirmation feature of the act of June 21, 1860, to which the town of Anton Chico is indebted for its title to the unallotted lands within its boundaries; and that Congress, in passing the title, performed an act of grace. It also results that, if the provincial officers had possessed the authority to alienate the public domain, the earlier town or community grant did not stand in the way of a lawful grant to Pino, or of a confirmation of such grant by the United States.

By admission and by assumptions favorable to appellee, we have reduced the question to this: As between a town grant, not intended nor assuming to pass title,

and an individual grant, intended and purporting to pass title, but void for lack of authority in the granting officers, the former being earlier as an original concession, and the latter having first initiated confirmation proceedings by application to the surveyor general, and having first procured survey, which has "the better right?"

Appellee relies on Jones v. St. Louis Land & Cattle Co., 232 U. S. 355, 34 S. Ct. 419, 58 L. Ed. 636, which it insists furnishes the rule of decision for this case. There the Supreme Court of the United States reversed the territorial Supreme Court in Stoneroad v. Beck, supra. The case involved an overlap between the Preston Beck grant and the Perea grant; the latter having been confirmed, also by the Act of June 21, 1860, as private land claim No. 16. The territorial Supreme Court, holding both grants void in their inception, and that the confirmation proceedings gave rise to no superiority of title to the overlap, awarded it in undivided moieties. But the Supreme Court of the United States gave it to the Preston Beck claimants.

In this decision the court cited Henshaw v. Bissell, supra, to the effect that:

"If there be claims under two patents, each of which reserves the rights of the other parties, the inquiry must extend to the character of the original concession."

It also quoted Miller v. Dale, supra:

"* * * We must look into the character of the original concessions; and, if they furnish no guide to a correct conclusion, we must seek a solution in the proceedings had before our tribunals and officers by which the claims of the parties were determined."

Thus the court seems to adopt the doctrine of the earlier decisions cited above as to the effect of section 4, and to adopt the further rule that, if the character of the original concessions is such that no priority results, the inquiry must extend to the proceedings had after sovereignty changed.

Counsel disagree completely as to the meaning of this decision. The doubt grows out of the peculiar and controlling facts in the case. The Preston Beck grant was

"in all its steps" prior to the Perea grant. Moreover, the Perea grant was admittedly void in its inception; its contention being merely that Preston Beck was no better. So, on either of the two theories which the language of Mr. Justice McKenna suggests, the Preston Beck grant was bound to prevail. It was unnecessary to decide whether the territorial officers had power to make the grant. If they had, it would prevail because prior in time as an original concession. If they had not, it would prevail over another invalid grant because of its prior initiation of confirmation proceedings and its prior survey. There was no possible theory upon which the Perea grant could hope even to divide the land, except that adopted by the territorial court, and that theory was found erroneous.

Appellee's counsel concede that, if the territorial officers who assumed to make the Preston Back grant had acted with authority, that grant would take title as against the earlier Anton Chico grant. Their proposition is that, as between two invalid grants, both confirmed, by Congress, priority of original concession is conclusive of superiority of title, and that Jones v. St. Louis Land & Cattle Co., so holds. They further contend that, under the rule stated in that case, if priority can be determined from the relative situations of the two grants before sovereignty changed, there is no occasion to inquire into the proceedings had thereafter under United States auspices. The result is, as they argue, that the Anton Chico grant of 1822 is superior to the Preston Beck grant of 1823.

This position of counsel is not without support in the opinion here being considered. We cannot say that the court did not entertain the view that, when the contest was between two grants, both perfect and complete in form, but both void for lack of authority of the officers making them, both titles, after confirmation, should be considered, on the doctrine of relation, as effective from their dates of original concession. It seems quite clear, on the other hand, that the decision was not based on that theory. If it was, it was quite unnecessary to consider the American proceedings at all and to reiterate that Preston Beck was prior "in all its steps." Counsel disregard

the court's pronouncement as to the effect of priority of application to the surveyor general and of survey, and here renew the argument, fully developed by the territorial Supreme Court, that these proceedings furnish no basis for superiority of title. That, we think, was adversely disposed of by the United States Supreme Court.

While not prepared to assent to appellee's interpretation of the opinion in Jones v. St. Louis Land & Cattle Co., we need not reject it. The case at bar is different. Even if found to apply the doctrine of relation to the Preston Beck and the Perea grants, it does not follow that it applies to the Anton Chico grant. Under appellee's theory of the Jones decision, the Preston Beck grant would be effective as of 1823. Yet it would not follow that the Anton Chico grant is effective from 1822.

As held in Reilly v. Shipman, supra, and as counsel for appellee here expressly concede, the Anton Chico grant was confirmed as a town or community grant. It cannot be said of it that "the act of Congress was not a gratuity. It was intended to be a discharge of the obligations of the treaty between the United States and Mexico." It cannot be said of it that "it was a confirmation of rights which existed, and as they existed." Nor can it be said that "we are dealing with rights which were recognized by the new sovereign because they were supposed to have legal validity under the old sovereign." On the contrary, it is a thoroughly established principle that Congress was not obligated by treaty to recognize such grants, except in so far as lands had been allotted under them. It was at liberty to claim the unallotted lands as public domain. Quitclaiming these lands to the town was gratuitous. A mere confirmation of Anton Chico's existing rights would have left the town without title to the overlap. When sovereignty changed, there were many imperfect and inchoate claims to lands. Such were described in Jones v. St. Louis Land & Cattle Co. as of imperfect obligation, affecting only the conscience of the United States, and which received from the new sovereign "a vitality and efficacy which they did not before possess." "When confirmed by Congress," such grants became "American

titles," and take "their [legal] validity wholly from the act of confirmation and not from any French or Spanish element which entered into their previous existence." It was of such grants that it was said that "the doctrine of senior or junior equities and of relation back has no application in the jurisprudence of such cases." But the Anton Chico grant, as to lands not allotted, is not even in this class. The former government had never passed title, or promised to pass it. There was no obligation on this government, and nothing to affect its conscience. We so understand the decisions hereinbefore cited.

Under the Jones decision, the effective date of the Preston Beck grant is either 1823, by relation to the original concession, or 1855, by relation to its application to the surveyor general. It does not matter which date is adopted. If the "American title" of the Anton Chico grant should relate back to its application to the surveyor general, a matter not necessary to be decided, it would not avail. It can only prevail on the theory that it takes some efficacy from the Mexican concession, a theory we cannot entertain.

Another view might be taken, leading to the same result. It was, as above pointed out, laid down by Mr. Justice Field, in Beard v. Federy, supra, that the reservation similar to section 4 here involved did not contemplate that every person might challenge the validity of a confirmed grant. It contemplated "only those who hold superior titles, such as will enable them to resist successfully any action of the government in disposing of the property." As to the unallotted lands here involved, the board of trustees of the town of Anton Chico holds but an "American title." Bond v. Barela, supra. It could not have resisted any disposition the government might have seen fit to make of the lands. Hence, it is not in a position to challenge the confirmation of them to the Preston Beck claimants any more than it would have been in a position, while under Mexican sovereignty to challenge a grant made under lawful authority of that government. More v. Steinbach, supra.

It is our conclusion that appellee's contentions cannot be sustained. The trial court sustained them and based the decision thereon. In this, according to our views, there was error. The error is fundamental, and appellee's position could not be improved upon another trial. It is therefore necessary to reverse the judgment, and it seems proper to remand the cause with a direction to the district court to dismiss the intervention. The present motion for rehearing is denied; but, since the present opinion goes somewhat further than the opinion withdrawn, appellee will have to file a second motion for rehearing within the usual time allowed for filing motion for rehearing.

It is so ordered.

PARKER, C. J., and BICKLEY, J., concur.

Note: Certiorari denied by United States Supreme Court, —— U. S. ——, 73 L. Ed. 86.