# UNITED STATES *v.* CONWAY.

APPEAL FROM THE COURT OF PRIVATE LAND CLAIMS.

No. 13. Argued and submitted January 12, 1899. — Decided October 30, 1899.

The act of Congress of December 22, 1858, 11 Stat. 374, confirming a grant of pueblos to Indians, operated to release to the Indians all the title of the United States to the land covered by it as effectually as if it contained in terms a grant *de novo;* and such action of Congress is not subject to judicial review.

Statement of the Case.

The United States is a proper and necessary party to a suit brought in the Court of Private Land Claims for confirmation of a private land claim, covering pueblos previously so granted to Indians, and can follow the litigation through all the courts that are given jurisdiction of the case.

When a title to public land has been confirmed by Congress, it should be respected by the Court of Private Land Claims : but conflicting claimants may resort to the ordinary remedies at law.

THIS was a petition filed by Maria de la Paz Valdez de Conway and twenty-one others in the Court of Private Land Claims for the confirmation of a tract of land known as the Cuyamungue grant, or private land claim, situated in the county of Santa Fé, Territory of New Mexico, and alleged to contain in excess of five thousand acres.

It appears from an examination of the *expediente*, offered in evidence as the basis of the claim, that on January 22, 1731, Bernardino de Sena, Tomas de Sena and Luis Lopez presented a petition to Governor Juan Domingo Bustamente to grant them the surplus land in the abandoned pueblo of Cuyamungue as royal, public and uninhabited, and described it as being situated on both sides of the river Tesuque, (formerly Cuyamungue,) and extending from a bluff of the pueblo of Cuyamungue to the hills of the Nambé road.

The governor made the grant on the same day, directed the chief alcalde of the new village of Santa Cruz to notify the Indians of the pueblo of Tesuque, the heirs of certain adjoining property owners and all other citizens of the vicinity to show cause, if any they had, why the tract should not be granted to the petitioners, and, if there were no objection, to put them in possession.

Such notice having been given, the alcalde on January 22, 1731, put the petitioners in juridical possession of the lands, describing the boundaries; and, after executing such act, returned the proceedings to the governor, by whom they were approved and placed in the royal archives of the city of Santa Fé, *testimonio* thereof being delivered to the grantees, the original of which is now a part of the archives of the United States in the custody of the surveyor general of the Territory. The grantees, their heirs and assigns, have been in possession

of the land grant up to the present time, a period of one hundred and sixty-four years.

The petition further alleged that the claim had been examined and approved by the surveyor general of the Territory, returned by him favorably to Congress with a recommendation that the same be confirmed to the legal representatives of the original petitioners; but that it had never been acted upon by Congress, or the authorities of the United States.

The Government made no answer to the petition, but the court proceeded to hear the cause upon petition and proofs under the last clause of section six of the Court of Private Land Claims act, notwithstanding the failure of the Government to file an answer. Petitioners produced certain witnesses to the effect that portions of the land granted had been occupied and cultivated by persons claiming under the original grantees; while the Government showed that Indians of the pueblos of Nambé and Pojoaque had many years before instituted proceedings before the surveyor general of New Mexico under the act of July 22, 1854, for four leagues of land each; that the surveyor general had recommended that the lands thus demanded be granted to them, and Congress had confirmed the grant to each of said pueblos for four leagues as recommended, 11 Stat. 374, c. 5, December 22, 1858; that the grants to said pueblos were surveyed and patents for them issued; that such surveys covered the larger portions of the land of the old pueblo of Cuyamungue, which petitioners alleged were granted to the original grantees in this case.

The oral testimony tended to show that the pueblo of Pojoaque had been in existence since 1710, and the pueblo of Nambé from a time immemorial.

Upon motion made by the Government and upon the consent of all the parties to the proceeding, it was ordered on October 11, 1895, that these pueblos be made parties, and that the petition of the claimants be deemed amended accordingly. It did not appear that any copy of the petition was served upon these pueblos, or that they appeared or waived service; but the court on October 24, 1885, entered a decree against the United States confirming the entire grant as com-

plete and perfect as of the date of the treaty of Guadalupe Hidalgo, in 1848, and further decreed that the confirmation should in no nowise affect the rights of the pueblos of Pojoaque and Nambé, if any they have, as between them and the confirmees under their patents issued by the United States Government.

Subsequently to this decree, and on November 9, the Indians of the two pueblos above named entered their appearance, stated that the lands confirmed to the petitioners were almost entirely within the limits of the lands confirmed by the act of Congress to these pueblos, and patented to them, and that while they were made parties defendant to the petition they were never served with process, and had no opportunity of making a defence, and therefore moved the court to vacate the decree of confirmation and allow them to be heard in opposition to the claim. This motion was subsequently, and on December 2, 1896, denied, whereupon the United States appealed to this court.

*Mr. Matthew G. Reynolds* for the United States. *Mr. Solicitor General* was on his brief.

*Mr. John K. Knaebel,* for appellees, submitted on his brief.

Mr. Justice Brown, after stating the case as above, delivered the opinion of the court.

This case involves the proper disposition by the Court of Private Land Claims, under the act of Congress constituting the court, of overlapping grants. The facts are extremely simple: Petitioners derived their title by purchase or inheritance from the original grantees, who held under a royal grant made in 1731 by the then governor of New Mexico, and through which they had been in possession of portions of the land ever since. Their grant had been examined, surveyed and approved by the surveyor general of the United States in 1871, but had never been confirmed by Congress. It was not true, as stated in the petition, however, that "no person or

persons, natural or artificial, are in possession of the said land, or any part thereof, or claim the same or any part thereof adversely to your petitioners, or otherwise than by their lease or permission," since it appears there were two Indian pueblos within the limits of the grant, from a time whence the memory of man and the traditions of the several tribes ran not to the contrary. It was shown that one of them, Pojoaque, had a bell originally cast for its church which bore the date of 1710. These pueblos had instituted proceedings before the surveyor general under the act of July 22, 1854, 10 Stat. 308, for four leagues of land, which he recommended to be granted, and in compliance therewith Congress confirmed a grant to each of said pueblos, which grants were subsequently surveyed and patents issued. 11 Stat. 374. These surveys covered all the land of the abandoned pueblo of Cuyamungue, granted to the petitioners, except about one hundred acres. It was insisted in the court below that the land covered by these patents should be excepted out of the degree of confirmation in this case; but it was held that the pueblos had no just right or claim at the date of the treaty to any part of the land covered by the petitioners' grant; that the United States acquired no right or interest in the land of a citizen in the ceded territory held by a complete and perfect title at the date of the treaty; that Congress did not undertake to decide who was the rightful owner of the land confirmed to the pueblos, but on the contrary expressly stated that the patents were not to interfere with any prior right to the land which might be held by other parties. Said the court: "If the petitioners in this case have a complete and perfect title to the land in question under the grant of 1731, it necessarily follows that the pueblos of Nambé and Pojoaque have no right or title to any of the land within the boundaries of such complete and perfect grant. But the decree of this court does not in any way affect the right and title (if any) that the pueblos acquired by their patents from the United States, as between them and petitioners."

The court declined to except out of the decree of confirmation the lands covered by the pueblos' patents, but did adjudge that the confirmation should in nowise affect the rights of

the pueblos as between them and the petitioners under their patents.

The case depends largely upon the construction given to the sections and parts of sections of the act of March 3, 1891, c. 539, 26 Stat. 854, constituting the Court of Private Land Claims.

By section six the petitioner is required to set forth, among other things, "the name or names of any person or persons in possession of or claiming the same," (the lands,) "or any part thereof, otherwise than by the lease or permission of the petitioner; . . . and a copy of such petition, with a citation to any adverse possessor or claimant, shall . . . be served on such possessor or claimant in the ordinary legal manner of serving such process in the proper State or Territory, and in like manner on the attorney of the United States;" whose duty it is "to enter an appearance, and plead, answer or demur, . . . and in no case shall a decree be entered otherwise than upon full legal proof and hearing."

By section seven the court has "full power to hear and determine all questions in cases before it relative to the title to the land the subject of such case; the extent, location and boundaries thereof, and other matters connected therewith fit and proper to be heard and determined, and by a final decree to settle and determine the question of the validity of the title and the boundaries of the grant or claim presented for adjudication, . . . and all other questions properly arising between the claimants, or other parties in the case, and the United States."

By section eight, persons claiming lands under a Spanish or Mexican title "that was complete and perfect at the date when the United States acquired sovereignty therein, shall have the right (but shall not be bound) to apply to said court in the manner in this act provided for in other cases for confirmation of such title;" but the confirmation of such title "shall be for so much land only as such perfect title shall be found to cover, always excepting any part of such land that shall *have been disposed of by the United States*, and always subject to and not to affect any conflicting private interests, rights or

claims held or claimed adversely to any such claim or title, or
adversely to the holder of any such claim or title. And no
confirmation of claims or titles in this section mentioned shall
have any effect other or further than as a release of all claim
of title by the United States; and no private right of any person,
as between himself and other claimants or persons in
respect of any such lands, shall be in any manner affected
thereby." It was under this section that the petition in this
case was presented and a "complete and perfect title" claimed.

By section thirteen, defining the character of claims that
shall be allowed as those that "if not then complete and perfect
at the date of the acquisition of the Territory by the
United States, the claimant would have had a lawful right to
make perfect had the Territory not been acquired by the
United States," it is provided in the second subdivision that
"no claim shall be allowed that shall interfere with, or overthrow,
any just or unextinguished Indian title or right to any
land or place;" and by subdivision four, that "no claim shall
be allowed for any land the right to which has hitherto
been lawfully acted upon or decided by Congress or under
its authority."

Subdivision five provided: "No proceeding, decree or act
under this act shall conclude or affect the private rights of
persons as between each other, all of which rights shall be
preserved and saved to the same effect as if this act had not
been passed; but the proceedings, decrees and acts herein provided
for shall be conclusive of all rights as between the
United States and all persons claiming any interest or right
in such land."

Subdivision six provides: "No confirmation of or decree
concerning any claim under this act shall in any manner
operate or have effect against the United States otherwise
than as a release by the United States of its right and title to
the land confirmed, nor shall it operate to make the United
States in any manner liable in respect of any such grants,
claims or lands, or their disposition, otherwise than as in this
act provided."

1. The decisive question in the case is: Whether the lands

confirmed by the act of Congress of December 22, 1858, pursuant to the recommendation of the surveyor general (11 Stat. 374) to the Indian pueblos of Pojoaque and Nambé, should have been excepted from the decree of confirmation? This act also contains a proviso similar to that contained in the Court of Private Land Claims act, that "this confirmation shall only be construed as a relinquishment of all title and claim of the United States to any of said lands, and shall not affect any adverse valid rights should such exist."

This act operated, then, to release to the Indians all the title of the United States to the land covered by it, and passed the title of the United States as effectually as if it contained in terms a grant *de novo. Ryan* v. *Carter,* 93 U. S. 78, 82. Nor is the action of Congress confirming such private land claim subject to judicial review. As was said by this court in *Tameling* v. *United States Freehold & Emigration Co.,* 93 U. S. 644, 662: "No jurisdiction over such claims in New Mexico was conferred upon the courts; but the surveyor general, in the exercise of the authority with which he was invested, decides them in the first instance. The final action on each claim reserved to Congress is, of course, conclusive, and therefore not subject to review in this or any other forum. It is obviously not the duty of this court to sit in judgment upon either the recital of the matters of fact by the surveyor general, or his decision declaring the validity of the grant. They are embodied in his report, which was laid before Congress for its consideration and action." See also *Maxwell Land Grant case,* 121 U. S. 325.

The Government having thus exhausted its power with reference to the land in dispute by granting all its title as sovereign proprietor to the pueblos, it is difficult to see upon what principle it is called upon to make or confirm another grant to a different person. Nothing can be plainer from the language of the Private Land Claim act than that lands "that shall have been disposed of by the United States" should be excepted from the decree of confirmation, (sec. 8;) that no claim shall be allowed which shall interfere with or overthrow any just or unextinguished Indian title, (sec. 13;) that no

claim shall be allowed for any land, the right to which has been lawfully acted upon and decided by Congress, (sec. 13,) and that no proceeding under the act shall conclude or affect the private rights of persons as between each other, (sec. 13). Under these provisions, if the court were to confirm this grant for lands already granted, such confirmation would be void, as nothing is better settled by this court than that a patent issued by the United States to lands which they do not own is a simple nullity. *Polk's Lessee* v. *Wendell*, 9 Cranch, 87, 99; *S. C.*, 5 Wheat. 293; *Sabariego* v. *Maverick*, 124 U. S. 261, 281; *Wright* v. *Roseberry*, 121 U. S. 488, 520; *Doolan* v. *Carr*, 125 U. S. 618, 625; *Noble* v. *Union River Logging Railroad*, 147 U. S. 165, 174.

It is true that the act of December 22, 1858, confirming these lands to the pueblos may have been itself void by reason of petitioner's prior title thereto; but that is a question which is not necessarily involved in this case and upon which we express no opinion. It will occasionally happen that the Government through accident or inadvertence will patent the same land a second time; but when its attention is called to the fact that the land has been previously patented it cannot patent the same land a second time without virtually stultifying itself. A patent assumes that a patentor has certain rights to convey, and that if those rights have already been conveyed with the knowledge of the grantor, a second patent carries with it a suspicion of a want of good faith.

Nor is the confirmation of this patent essential to the protection of the petitioners. The title set forth is one which was complete and perfect at the date of the treaty, and while they had the right, under section eight, they were clearly not bound to apply to the court for a confirmation of such title, but were at liberty to resort to the local courts for its establishment.

It is possible that the surveyor general, in recommending the grant of four square leagues to each pueblo, measured from the church as a centre, allowed more than was proper; yet, as he acted according to the opinion at one time prevailing, and as Congress confirmed the grant to that amount, the propriety of such grant cannot be attacked here upon that or

any other ground. As was said in the case of *Tameling* v. *U. S. Freehold Co.*, 93 U. S. 644, 663 : "Congress acted upon the claim as recommended for confirmation by the surveyor general. The confirmation being absolute and unconditional, without any limitation as to quantity, we must regard it as effectual and operative for the entire tract."

Nor is this the proper time to adjudicate upon the respective merits of the two titles. We have only to consider whether the Government can properly be called upon to confirm that which it has already confirmed to another party. The Court of Private Land Claims seems to have assumed that the grant by Congress to the pueblos was absolutely void by reason of the fact that the petitioners having a complete and perfect title the United States had nothing to convey. This may be entirely true, but it is not perceived how the petitioners' title can be aided by the Government divesting itself for a second time of a title which it had already released. The duty of the court under section eight, " to hear, try and determine the validity of the same " (the grant) " and the right of the claimant thereto, its extent, location and boundaries," is discharged by determining the extent and validity of the grant as between the United States and the grantee, and it is not incumbent upon the Court of Private Land Claims to determine the priority of right as between him and another grantee. Such private rights are carefully preserved in the eighth and thirteenth sections.

2. The appeal in this case was properly taken by the United States. While the Government may have no interest in the result of the litigation, it is a proper and necessary party to the suit, and it would be a strange conclusion to hold that it could not follow the litigation through all the courts that are given jurisdiction of the case. Upon such appeal the Government is at liberty to show that the petitioner is not entitled to a confirmation of his claim. Indeed, an appeal is expressly given by section nine, which enacts that " the party against whom the court shall in any case decide — the United States in case of the confirmation of the claim in whole or in part, and the claimant in case of a rejection of a claim in whole

or in part — shall have the right of appeal to the Suprem·· Court of the United States."

3. That the Indian claim or title is a "just and unextinguished" one within the meaning of section thirteen, subdivision two, of the act is shown by the fact that such title was confirmed by Congress. By the word "just" in this connection is meant only a title which is good upon its face, or not manifestly frivolous — not one which shall ultimately turn out to be valid. As already observed, it was not the object of. the act to permit private titles to be litigated in the Court of Private Land Claims, (although perhaps this may be done in-. cidentally,) but merely to determine if and to whom the United States ought to release its rights as sovereign proprietor of the soil. As was said by this court in *Adam* v. *Norris,* 103 U. S. 594:

"But the United States, in dealing with the parties claiming under Mexican grants lands within the Territory ceded by the treaty of Mexico, never made pretence that it was the owner of them. When, therefore, guided by the action of the tribunals established to pass upon the validity of these alleged grants, the Government issued a patent, it was in the nature of a quitclaim — an admission that the rightful ownership had never been in the United States, but had passed at the time of the cession to the claimant, or to those under whom he claimed. This principle has been more than once clearly announced in this court. The leading cases are *Beard* v. *Federy,* 3 Wall. 478; *Henshaw* v. *Bissell,* 18 Wall. 268; *Miller* v. *Dale,* 92. U. S. 478.

"Such a patent was, therefore, conclusive only as between the United States and the grantee, [and was evidence that, as to them, the claimants had established the validity of the grant.] . . . We do not think, therefore, that if defendant's survey and patent are based upon a superior Mexican grant, their rights are concluded by the prior survey of the plaintiffs."

We do not wish to be understood as holding that two claimants to the same land may not litigate, as between themselves, which of the two is entitled to a confirmation, and

the question thus becomes *res adjudicata;* but when the title has once been confirmed by Congress it should be respected by the Court of Private Land Claims as if it were a confirmation by the court itself, and conflicting claimants.are at liberty to resort to the ordinary remedies at law or in equity, according to the nature of the claim.

The main object of the Court of Private Land Claims is to ascertain and determine whether the land claimed as private property under the treaty is in fact private property, or, on the contrary, is public property.  In the latter case, of course, a confirmation is refused; in the former case a confirmation is made if the claimant appears to have, as between himself and the United States, the right to it, but subject to the rights of others who are at liberty to assert their superior title in the local courts.

*We are therefore of opinion that the decree of confirmation should have excepted the pueblo lands, and such decree is accordingly reversed, and the case remanded for further proceedings in accordance with this opinion.*

Mr. Justice Shiras and Mr. Justice White dissented.