[No. 999.    September 2, 1903.]

THE TERRITORY OF NEW MEXICO, Appellee, v. THE PERSONS, REAL ESTATE, LANDS and PROPERTY Described in the Delinquent Taxlist of the County of Bernalillo for the Year 1901.

### SYLLABUS.

Lands embraced in a perfect Spanish-Mexican land grant, are subject to taxation in this Territory, notwithstanding the facts, that the grant has been submitted for confirmation by the Court of Private Land Claims and patent has not been issued.

Appeal from the district court of Bernalillo county, before BENJAMIN S. BAKER, Associate Justice. Affirmed.

E. W. DOBSON for appellants.

While the land is still subject to the control of the government it is beyond the reach of the Territory's power to tax.

Railway Co. v. Prescott, 16 Wall. 603.

Lands on which the costs of survey have not been paid, and for which the United States has not issued a patent to the company, are exempt from State taxation.

Colorado Company v. Commissioners, 95 U. S. 259; see also Hussman v. Durham, 165 U. S. 144; Lamborn v. County Commissioners, 97 U. S. 181; Northern Pac. Railroad Co. v. Traill Co., 115 U. S. 600.

F. W. CLANCY, District Attorney, for the Territory.

No brief for appellee.

### STATEMENT OF THE CASE.

This is a proceeding instituted under the Territorial tax statute to secure judgment for the taxes levied upon the Ojo del Borrego grant in Bernalillo county for the year 1900. The complaint was filed on October 12, 1901, and on November 29, 1901, Elizabeth E. Longwell and other heirs at law of Robert H. Longwell, deceased, all claiming an interest in the premises, filed an answer setting up the fact that said land was granted to one Nerio Antonio Montoya on the seventeenth day of March, 1768, by the governor and captain-general of what was then the Spanish province of New Mexico; that said grant had been confirmed by the Court of Private Land Claims; that a survey had been made pursuant to said confirmation and said survey had been duly approved by that court, but that no patent had issued at the date of the assessment of the taxes in question, and that defendants had not at that time paid the one-half cost of survey, which payment, section 10 of the land court act, 26 St. 854, makes a prerequisite to the issuance of patent. It is claimed by the defense in the answer that until the payment of said expenses and the issuance of patent, the legal title to the lands embraced within the grant remained vested in the United States,

and such lands were not a proper subject of taxation, and that the assessment for taxes was illegal and void. The Territory through its district attorney, demurred to this answer upon the ground that it raised no defense to the proceeding. The demurrer was sustained, and defendants electing to stand upon their answer, judgment was rendered in favor of the Territory for the taxes levied together with penalties and costs amounting in all to 203.57. Thereupon the defendants prosecuted this appeal.

### OPINION OF THE COURT.

McFIE, J.—It is admitted in the briefs filed by counsel for each of the parties, that the Ojo del Borrego grant was confirmed by the Court of Private Land Claims, as a perfect and complete grant; and, while there is a contrary allegation in the answer, it is admitted by counsel for defendant in his brief filed in this court, that at the date of the assessment complained of, the official survey of the grant had been made under the decree of confirmation, and that at this date said survey had been approved by the Court of Private Land Claims. These admissions reduce the present case to a single question, and that is whether or not taxes may be collected upon a perfect grant, confirmed by that court, where such grant (to quote from the brief of appellant) "had at the time of the assessment for purposes of taxation been surveyed and the survey thereof approved by the said land court, but where patent therefor had not issued and the confirmee had not paid one-half (1-2) of the expenses incurred in making the survey and platt provided for by section 10 of the act of Congress, approved March 3, 1891." In other words, does the mere failure to pay these expenses and take out patent, preclude the assessment of taxes upon a perfect grant, when at the date of such assessment the grant had been confirmed, officially surveyed, and such survey been approved by the Court

of Private Land Claims? The solution of this question does not seem to be difficult. The finding of the Court of Private Land Claims, that this was a perfect grant, was in legal effect, a finding that at the date of the treaty of Guadalupe Hidalgo, the owners of this grant held it by a perfect and complete title since all confirmations are, by the land court act, made referable to the date of cession. What was the legal status of property held under a Spanish or Mexican title, which was perfect at the date of the treaty? Was it in any sense inferior to the tenure under a perfect American title at the same date? As to this, the decisions of courts of the highest authority are to the effect that it was not.

The treaty of Guadalupe Hidalgo of February 2, 1848, following what is said to be "a rule by the laws of nations even in cases of conquest and undoubtedly so in case of cession" (U. S. v. Wiggins, 14 Peters 349), provided that the property of Mexicans within the Territory ceded, should be "inviolately respected;" that they should "enjoy with respect to it, guarantees equally ample as if the same belonged to citizens of the United States" and should be "maintained and protected in the free enjoyment of their liberty and property." The effect of this treaty, and indeed, of the law of nations independent of the treaty, was to leave titles which were perfect and complete under Mexico, perfect and complete under the United States. They were "intrinsically valid" and needed "no sanction from the legislative or judicial departments of this country." U. S. v. Wiggins, supra; U. S. v. Lucero, 1 N. M. 447. They required "no confirmation." Synder v. Synkles, 98 U. S. 204. They were "not to be affected or regulated by the political authorities to whom a country is afterwards ceded, any more or otherwise than any private rights and property of the inhabitants of such a country." Doe v. Eslava, 9 Howard 445 and cases cited. The holder of such a title, when encroached upon should "find protection in

the judicial tribunals as he can get nothing by a resort to confirmations, or release, or patents, by the political power which acquired the sovereignty over the territory, but not over the property itself, belonging to its inhabitants." (Ib.) His complete title to lands is strengthened by no confirmation from the United States who have acquired no interest in them. (Ib.) Even without treaty stipulations, those titles would remain "as valid under the new government as they were under the old." Strother v. Lucas, 12 Peters 438. And so far as they were consummated, might be asserted in the courts of the United States. (Ib.) The holders of such titles in New Mexico are, at least since the act of March 22, 1854 was superseded by the act of March 3, 1891, at liberty to assert them as against any private claiment in the ordinary courts of justice. Ainsa v. Railroad, 175 U. S. 76, 81 and 90; U. S. v. Conway, 175 U. S. 68.

It follows, therefore, that independent of any action on this grant by the Court of Private Land Claims, the government at the date of the assessment, had absolutely no interest in it, but that the owners thereof were vested with a perfect title; a title as good as they held under the former government one, which it is beyond the power of the government to improve by confirmation or otherwise. This being the case, this property constituted "lands . . . . to which title or right to title, had been acquired," and thus within the definition of "property" which, under section 4019, Compiled Laws 1897, may be taxed in New Mexico. That a perfect Spanish or Mexican land grant, although unconfirmed, may be taxed is distinctly held in Maish v. Arizona, 164 U. S. 599, where in overruling the contention that the grant was not taxable because unconfirmed, the court said: "It must be borne in mind, that in the record before us, these land grants, are not otherwise described than as Mexican land grants. For aught that appears, they may have been 'perfect grants' as they are sometimes called." While it is true, that under the Arizona statute control-

ling that case, it was not found necessary by the court to give to a perfect grant an effect beyond the statement that it vested "at least an equitable title in the owner," it is believed that the reasoning of the court in that case is to the effect that perfect and complete grants are taxable in this Territory, irrespective of any confirmation by the Court of Private Land Claims. It is urged, however, that conceding, arguendo, the correctness of this conclusion, the proceedings instituted by the claimant in the Court of Private Land Claims, has rendered the property not taxable by reason of the fact, that the United States has acquired an interest therein, in the form of a lien for claimants' unpaid half of the expenses of survey. In other words, that although under the land court act, the holder of a perfect and complete title, has "the right (but shall not be bound)" to apply for a confirmation of his grant, his electing to go into that court and seek a judicial recognition of his previously perfect title, precludes its taxation prior to the payment to the government of the expenses of the survey—a payment which the law exacts not as prerequisite to the standing of his title in the local courts, not as a prerequisite to its confirmation by the land court, nor to the final approval of the survey by that court, but simply as a condition precedent to the issuance to him of a patent, an evidence of title and an instrument which, when issued "upon the confirmation of a claim of a pre-existing title," is simple "documentary evidence" of that title. Langdon v. Hanes, 21 Wallace 521. Stating the proposition in another way, it is this, that although the government had no interest prior to the land court proceeding, the lien for the costs for survey created by that proceeding, gives the government such an interest as renders the land non-taxable. Counsel for appellants have called the court's attention to several cases, which it is contended sustains the position last stated. The first of these cases is Railway Company v. Prescott, 16 Wall. 603. In that case, the statute under which the railroad

claimed the land, was one which provided that "before any land granted by this act shall be conveyed to any company or party entitled thereto under this act, there shall first be paid into the treasury of the United States the cost of surveying, selecting and conveying the same." These costs not havng been paid prior to the assessment for taxation, it was argued that there was no liability for taxes. The question arising in that case is plainly stated on page 605 as follows: "Who was the owner of the land at the time it was assessed and taxed, the United States or the railway company? If the United States, then the land was not subject to State taxation and the sale was void. If the railway company, it was." The court further held first, that the wording of the act of Congress made only an inchoate grant to the railroad and that to permit these lands to be sold for taxes, would be to permit the title to be divested out of the government without its consent; and second, that to permit the property to be sold for taxes would be to defeat "the right (of the government) to recover the moneys expended in surveys;" and upon these two grounds the property was adjudged non-taxable. It is evident however, that neither of these reasons exist in the present case. Here, the appellants have a perfect and not an inchoate grant. The title was vested in appellant prior to the assessment, and was not dependent for its completion upon the payment of costs. True, a patent may not issue prior to their payment, but the owner of such a grant has a complete and perfect title without it. At the date of the assessment of these taxes there was the decree of the tribunal especially provided by Congress, declaring the title to have been complete and perfect since 1848, confirming it as such, and also a supplemental decree of the same court, approving the survey of the grant so confirmed: It was not a case where the title might be divested out of the United States, "without its consent." The United States at the date these taxes were assessed had no title and never had had any.

It is equally evident, that the second reason underlying the Prescott case, has no application here. The withholding of the title, in that case, was declared to be the only means which the government had of enforcing its claim for costs. Here, however, the land court statute provides a full remedy, entirely consistent with a title in fee in the confirmees or in purchases at a tax sale. Section 10 provides, that these unpaid costs "shall be a lien on said land which may be enforced by the sale of so much thereof as may be necessary for that purpose, after a default of payment thereof for six months next after the approval of such a plat and survey." This lien with its accompanying provisions for foreclosure, exists until the costs have been satisfied. It is a paramount lien, indefeasible by tax sale and good against the property whether in the hands of a tax-sale purchaser or any one else. The levy and sale of the property can not effect it and, indeed, to make it clear that there was no intention on the part of the Territory to put this lien in question, by tax sale, it is expressly provided in the Territorial act of 1899, Laws of 1899, p. 99 that any sale for taxes of any land grant, is declared to be subject to any lien which the United States may have upon the land embraced within the grant for "the expenses of making survey and plat for any part thereof, as provided by act of Congress," and the collector of taxes is required to insert in any certificate of sales for taxes, a clause specifically stating that the sale is made subject to such lien of the United States. The taxing of the grant does not therefore, render the government remediless in collecting its costs, nor in the least degree impair the ample remedy given by the Federal statute. It is true, that section 10 of the land court act also provides that no patent shall issue, until after payment of costs. As has been said, however, a patent issued in confirmation of a pre-existing title, is documentary evidence of that title. Withholding it does not, at least, in the case of the confirmee of a perfect and complete grant, either

increase the government's interest in the land or diminish the owners. It simply withholds from the latter a convenient additional evidence of his title. It is worthy of notice, that the provision of the land court act withholding the patent for the payment of costs, is a very different procedure than that provided by the act of Congress mentioned in the Prescott case, and in one or two others, to which we will presently refer. In these cases the provision of statute is, that the lands shall not be "conveyed," or the confirmation shall "not be legally effective" until payment of costs. Had it been the intention of Congress to put the confirmees under the land court act on the same basis, it would have provided in the act of 1891, that the confirmation should not become legally effective until the costs had been paid, or some similar provision. Instead of that, the government permits full confirmation and approval of survey, but retains a lien and withholds patent. The other case cited by appellants are likewise distinguishable. Railway Company v. McShane, 22 Wall. 444, was based upon the same statute and the same reasoning as the Prescott case. It was there held (page 462), that the payment of the costs constituted a condition precedent to the right to receive the title, "and that until this was done" the equitable title of the company "was incomplete." It was also held, that it could not be permitted to the States to defeat or embarrass the right of the United States to the costs, by the sale of the land for taxes. The inapplicability of this decision to a case, where the government had no title in the land, but on the other hand there was a perfect title in the owner and where there was full remedy left the government consistent with the exercise of the taxing power, has already been pointed out. The same observations apply to Colorado Company v. Commissioners, 95 U. S. 259, where the statute confirming the grant, expressly provided that the costs of the survey must be paid before the confirmation should "become legally effective," a very different situa-

tion from that of a perfect title duly vested. In Northern Pacific Company v. Traill County, 115 U. S. 600, the court simply reaffirmed the principles set forth in the Prescott and McShane cases, which have been considered and found to be inapplicable to this case. Under the treaty above referred to, the laws enacted recognizing and protecting property rights therein, and the decisions of the courts of the United States sustaining the rights of the property thus guaranteed, it must be admitted that a perfect and complete grant is taxable in the territory. If such were not the case, as the owner is not required to submit the grant to the Court of Private Land Claims for confirmation, but may rely upon his former title, the lands embraced in such grant would remain non-taxable, so long as the owner desires. Clearly however, under the laws, such lands are taxable and it seems to us unreasonable that the mere submission of a grant held by perfect title could change the status to such extent as to render the lands non-taxable. If that were true, all that would be necessary to defeat taxes upon such a grant would be to submit it to the land court, secure confirmation, refuse to pay costs of surveying the lands and thus prevent the issuance of a patent. It is only necessary to remember that the lands were taxable prior to application for confirmation, to demonstrate the unsoundness of this position. Upon full consideration of this case, we are of opinion that the property assessed, was a proper subject of taxation, and the judgment of the court below is, therefore, affirmed.

Mills, C. J., and Parker, A. J., concur.